1
2
3
4                          UNITED STATES DISTRICT COURT

5                         NORTHERN DISTRICT OF CALIFORNIA

6

7    CECIL H. MOSS,                          Case No.  3:22-cv-01252-JSC

8                    Plaintiff,

9         v.                                 **ORDER RE: DEFENDANT'S MOTION
                                             FOR SUMMARY JUDGMENT**
10   CITY AND COUNTY OF SAN
     FRANCISCO,                              Re: Dkt. No. 49

11                  Defendant.

12

13        Plaintiff Cecil Moss, Jr. alleges the City and County of San Francisco (the "City")[1]

14   violated the California Fair Employment and Housing Act ("FEHA"), and four additional causes

15   of action stemming from disability discrimination.  The City moves for Summary Judgment.  (Dkt.

16   No. 49.)[2]  For the reasons discussed below, the Court GRANTS in part and DENIES in part the

17   City's motion.  Moss has established genuine issues of material fact as to whether the City

18   reasonably accommodated him and whether the City is responsible for the breakdown of the

19   interactive process.

20   //

21

22   _____

23   [1] Moss also names the San Francisco Municipal Transportation Agency ("SFMTA") as a
     Defendant.  The Court take's judicial notice of the City's Charter §§ 1.101, 8A.101, (Dkt. Nos. 51-
     1; 51-2).  Under the San Francisco Charter, only the City, and not its constituent agencies, "may
24   appear, sue and defend in all courts and all matters and proceedings." (Dkt. No. 51-1 at 2.)  *See also
     Leland v. City and County of San Francisco*, 576 F. Supp. 2d 1079, 1089 (N.D. Cal. 2008) ("A
25   city department . . . may be sued only if it has the capacity to sue or be sued under the city
     charter."); *see also Sanders v. San Francisco Pub. Libr.*, No. 23-CV-00211-JSW, 2023 WL
26   5723695, at *3 (N.D. Cal. Sept. 5, 2023) (same).  Moss concedes "SFMTA is operated by City. . .
     [A]ll SFMTA actions were controlled by the City."  (Dkt. No. 57 at 8 n.2.)  As such, SFMTA may
27   not be sued separately from the City and is not a proper defendant.  SFMTA is therefore
     DISMISSED.
28   [2] Record citations are to material in the Electronic Case File ("ECF"); pinpoint citations are to the
     ECF-generated page numbers at the top of the documents.

**BACKGROUND**

Moss was hired by the San Francisco Municipal Transportation Agency ("SFMTA") as a part-time 9163 Transit Operator on February 1, 2016, eventually moving into a full-time position earning about $38 per hour.  (Dkt. No. 58 ¶ 2.)   Moss's primary responsibilities as a Transit Operator were to operate MUNI buses and collect fees.  (*Id.*)

On July 13, 2016, Moss was driving a MUNI bus when the hydraulic pedals on the bus malfunctioned and fractured his right ankle.  (*Id.* ¶ 4.)   He began a full-time leave of absence to receive treatment for his injury on July 22, 2016.  (Dkt. No. 56 ¶ 10.)

As a result of his injury, Moss was treated by Panel Qualified Medical Examiner Dr. Naeem Patel.  (*Id.* ¶ 11.)  In July of 2018, Dr. Patel saw Moss "for the purpose of determining various issues of permanent disability with respect to a reported industrial event of 7-13-2016." (Dkt. No. 56-2 at 3.)  Dr. Patel concluded it was "clear that [Moss] suffered a work related injury on 7-13-2016 during the course of performing his usual and customary work duties."  (*Id.* at 19.) Dr. Patel deemed Moss "permanent and stationary as of 7-23-2018" and explained he would "need future medical care."  (*Id.*)

In December of 2018, Dr. Patel provided "specific permanent work restrictions" for Moss based on his July 2018 examination of Moss.  (Dkt. No. 56-3 at 3.)  Dr. Patel stated: "Mr. Moss's work restrictions are no lifting over twenty pounds, no repetitive bending or twisting, patient should be allowed to alternate sitting or standing position as patient comfort.  No repetitive use of the right lower extremity."  (*Id.*)

On January 8, 2019, SFMTA informed Moss he could not "perform the usual and customary job duties in [his] job as a 9163, Transit Operator with the SFMTA."  (Dkt. No. 56-4 at 2.)  The City informed Moss he could choose from four options: (1) Request a Reasonable Accommodation; (2) Apply for Service Retirement; (3) Apply for Ordinary Disability Retirement; or (4) Resignation.  (*Id.* at 2-3.)  On January 17, 2019, Moss responded and informed SFMTA he "would like a Reasonable Accommodation" and "would like another position with the SFMTA or City."  (Dkt. No. 56-5 at 2.)

SFMTA Reasonable Accommodation Coordinator, Mariana Valdez contacted Moss on

United States District Court
Northern District of California

January 22, 2019 for a "Meeting: Scheduled/Appointment." (Dkt. No. 55-1 at 3.)  According to the City's "Case Summary" which is meant to "memorialize[] every action taken by the reasonable accommodation team as it worked with Cecil Moss, Jr.," on February 6, Valdez and Moss had a "Meeting: Scheduled/Appointment."  (Dkt. No. 55 ¶ 4; Dkt. No. 55-1 at 3.)  The "Case Activity Notes" for February 6 state: "Updated LOA [Leave of Absence] and ADA [Americans with Disabilities Act] forms; He is working on verification of welding experience.  Cannot do PCO [Parking Control Officer], Janitor, car cleaner; He will see Dr. Valmassy on 2/20/19 and try to get med restrictions lessened."  (Dkt. No. 55-1 at 3.)  On or around the same day, SFMTA received forms completed by Moss as part of the reasonable accommodation process.  (Dkt. No. 56 ¶ 17.)  On the "Employee Reasonable Accommodation Request Form," Moss stated: "Broke my ankle at work resulting in permanent nerve damage. Want to be reassigned to a job that accomodates [sic] my injury."  (Dkt. No. 56-8 at 2.)  Moss indicated his physical limitations were explained in the January 8, 2019 letter from the SFMTA.  (*Id.* at 3.)

On February 28, 2019, City records indicate Valdez had a telephone call with Moss. (Dkt. No. 55-1 at 4.)  The City's record of this call states:

> Started with Pacific Steel casting 11/28/11; he will attempt to verification [sic] of service and responsibilities; completed new LAO [sic] and turned in doctor's note: Reviewed 9102, 8214, 2708 and do not qualified [sic] due to medical restrictions. Reviewed 7390 Welder, but salary more than 5% and still need verification. Discussed citywide job search and what that envolves [sic].

(*Id.*)  The same day, Valdez sent Moss a letter acknowledging Moss was "disabled under the federal American Disabilities Act (ADA) and/or California Fair Employment and Housing Act." (Dkt. No. 56-9 at 2.)  In this letter, Valdez stated "the SFMTA has determined that we are not able to provide you an accommodation in your **Class 9163 Transit Operator** position," so the SFMTA then "considered other SFMTA positions."  (*Id.*)  The letter indicated Moss met "the minimum qualifications" for positions in seven job classifications at the SFMTA.  (*Id.*)  For three of those positions, Valdez's letter indicated Moss's medical restrictions prevented the SFMRA from considering Moss for that position: 2708 Custodian; 8214 Parking Control Officer; and 9102 Transit Care Cleaner.  (*Id.* at 2-3.)  For another three positions, Valdez's letter indicated that no

3

1    vacancies existed: 7454 Traffic Signal Operator; 9110 Fare Collection Receiver; and 9126 Transit

2    Traffic Checker.  (*Id.*)  For the final position, 8201 School Crossing Guard, Valdez's letter

3    checked the box in the "no interest" column. (*Id.*)

4        Moss disputes the City's "no interest" designation.  He testifies "at no point did I tell Ms.

5    Valdez that I was not interested in this position" and he "would have continued to pursue this

6    opportunity had SFMTA updated [him] on its availability."  (Dkt. No. 58 ¶ 16.)  According to

7    Moss, he "did not catch the fact that this position was marked as 'No Interest'" in the letter and, if

8    he had caught it, he "would have made clear to SFMTA that this was not the case."  (*Id.*)  Moss

9    also testifies Valdez did not provide him "with the hard copies of the job descriptions" they

10   discussed, so he "had no opportunity to independently verify the statements Valdez made with

11   regards to each position."  (Dkt. No. 58 ¶ 17.)

12       The February 28, 2019 letter explained because there was "no current open and vacant

13   positions within the SFMTA for which" Moss was qualified, interested in, and met the medical

14   restrictions, the SFMTA was "referring [his] request" to the City's Department of Human

15   Resources Americans with Disability Act ("ADA") Coordinator "to conduct a citywide job

16   search."  (Dkt. No. 56-9 at 3.)  This citywide job search was scheduled to "last for 60 days."  (*Id.*)

17   SFMTA informed Moss they would "continue conducting a search for SFMTA vacancies" during

18   the citywide search and would "keep [Moss] informed of the status of [his] seniority as it relates to

19   an identified and open position."  (*Id.* at 2-3.)

20       The City never sent Moss any updates about his place on the seniority list for any of the

21   positions mentioned in the letter.  (Dkt. No. 58 ¶ 18.)   However, the City's internal documents

22   indicate Moss was placed on the seniority lists for the 8201 School Crossing Guard position, the

23   8214 Parking Control Officer Position, and the 9102 Transit Car Cleaner Position.  (Dkt. No. 57-8

24   at 2-3.)

25       On March 19, 2019, Moss met with Yazmin Gonzalez, an Equal Employment Opportunity

26   Programs Senior Specialist in the City's Department of Human Resources.  (Dkt. No. 53 ¶¶ 1, 18.)

27   Gonzalez asked Moss "what job classifications he was interested in," and Moss "expressed interest

28   in welding positions generally."  (*Id.* ¶ 20.)

1    On March 21, 2019, Gonzalez spoke with Moss by phone and told him he might meet the

2    minimum qualifications for a 2587 Health Services Worker III based on his self-reported

3    experience as a caretaker for a family member.  (*Id.* ¶ 24.)  Gonzalez "asked Mr. Moss to provide

4    [her] with verification of his experience, and he agreed to do so by April 1, 2019."  (*Id.* ¶ 24.)

5    Because of Moss's expressed interested in welding, Gonzalez also reviewed the City's job

6    classification page for welding positions and identified two positions: a 7390-Welder classification

7    and a 7360-Pipe Welder classification.  (*Id.* ¶ 21.)  After conducting a salary analysis of those

8    positions, Gonzalez determined "the Salary Ceilings of the welding positions were above the 5%

9    threshold established by the Civil Service Rules and [Department of Human Resource's]

10   interpretation thereof."  (*Id.* ¶ 22.)  On April 9, 2019, Gonzalez wrote a letter to Moss explaining

11   the two welding positions "exceeded the salary ceiling" set by Moss's 9163 Transit Operator

12   position.  (Dkt. No. 53-5.)  She also informed Moss she had not yet received the verification of

13   Moss's previous experience for the 2587 Health Services Worker III position.  (*Id.*)  Moss was

14   unable to obtain that verification from his previous employer despite Moss's "various attempts" to

15   obtain such verification. (Dkt. Nos. 53 ¶ 26; 58 ¶ 24.)  Moss informed Gonzalez of the issue and

16   asked whether Gonzalez would be able to request and obtain the verification because Moss was

17   certified by the state to work at a housing facility.  (Dkt. No. 58 ¶ 24.)  Gonzalez said she would

18   "look it up," but never told Moss if her efforts were successful or unsuccessful. (*Id.*)

19   Gonzalez began the 60-day citywide job search process for Moss on April 9, 2019, and

20   concluded it on June 17, 2019.  (Dkt. No. 53 ¶¶ 25, 29.)  At the end of the 60 days, Gonzalez had

21   not identified a "vacant, unfilled Eligible Position for Mr. Moss" because "none existed." (*Id.* ¶

22   29.)  The day the search ended, June 17, 2019, Gonzalez called Moss to explain "the job search

23   period had ended."  (*Id.* ¶ 30.)  Gonzalez confirmed this call in a letter to Moss and then referred

24   his case to the Human Resources team at SFMTA.  (*Id.* ¶ 31; Dkt. No. 53-6.)

25   On June 26, 2019, the new SFMTA reasonable accommodation coordinator, Mona Wood,

26   emailed Moss to schedule the final interactive meeting.  (Dkt. No. 56-11 at 2.)  On July 3, 2019,

27   Wood sent Moss a "Notice of Intent – Medical Separation," which explained the SFMTA was

28   "recommending that [Moss] be medically separated from [his] Permanent Civil Service Class

9163 Transit Operator position." (Dkt. No. 56-12 at 1.) The letter explained the recommendation was "based on [his] inability to perform the essential functions of [the] Class 9163 Transit Operator; [his] inability to return to work for over two years; and the lack of other vacant, positions of which [Moss] qualif[ied]." (*Id.*) Wood further stated the final meeting was scheduled for July 15, and at that meeting Moss could "raise any objections or concerns" he had. (*Id.*)

During the July 15, 2019 meeting, Moss explained his "medical restrictions [had] improved" and he could now "lift 40 pounds (previously 20 pounds)." (Dkt. No. 56-13 at 2.) Moss "inquired about the 2708 Custodian, 8214 Parking Control Officer and 9102 Transit Care Cleaner positions." (*Id.*) Wood explained those positions "required lifting of 50 pounds" and "employment verification to support [Moss's] experience" in those positions. (*Id.*) Moss responded he did not have experience for the 2708 Custodian or 9102 Transit Car Cleaner positions. (*Id.*) He also requested the interactive process period be extended so Moss could "revisit" his doctor "to provide a new lifting restriction of 50 pounds," so he could be considered for the 8214 Parking Control Officer position. (*Id.*) The SFMTA granted Moss's request for more time to July 22, 2019, but noted "currently there are no 8214 Parking Control Officer positions available." (*Id.*)

On July 23, 2019, Moss's attorney requested an additional 60-day extension of the interactive process so Moss could obtain revised restrictions from his doctor. (Dkt. No. 56-14 at 2.)

On August 9, 2019, the City received a letter from Moss's attorney that included a report from Dr. Patel. (Dkt. No. 56-15 at 2.) Dr. Patel indicated he had "reviewed the job duties as a Parking Control Officer" and felt Moss "can do the duties as described in the job description." (*Id.* at 3.) However, Dr. Patel also explained "the work restrictions" from the earlier report, including "no lifting over twenty pounds (increased to 40 pounds temporarily)," "no repetitive bending or twisting," and "patient should be allowed to alternate sitting or standing position as patent comfort" were "still" in "effect." (*Id.*)

On August 14, 2019, the SFMTA opened a specialized recruitment for an 8214 Parking Control Officer. (Dkt. Nos. 56 ¶28; 56-17 at 2.) The position's stated minimum qualifications

6

were:

> 1. Two (2) years of satisfactory public contact experience which must have included providing and/or verifying information on laws, rules, regulations, and procedures, or responding to client or customer complaints as a primary responsibility; OR
> 2. Successful completion of two (2) years military service either on active or reserve duty; OR
> 3. Six (6) months of satisfactory experience as a class 8214 Parking Control Officer.

(*Id.* at 3-4.)  Moss did not have experience that met these minimum qualifications.  (Dkt. No. 56 ¶ 28.)  "Aside from this specialized 8214-Parking Control Officer recruitment, the [SFMTA] had no other 8214 vacancies."  (*Id.*)

On August 21, 2019, Wood emailed Moss's doctor, Dr. Patel, to request Dr. Patel complete the" 8214 Essential Functions Guide, Health Care Provider Certification and Functional Capacity Form" by September 4, 2019. (Dkt. No. 56-18 at 2.)

When the City did not receive the forms from Dr. Patel, on September 5, 2019, Wood emailed another one of Moss's doctors, Dr. Ronald Valmassy, to have him complete the 8214 Essential Functions Guide, Health Care Provider Certification and Functional Capacity Form for Moss.  (Dkt. No. 55-1 at 16.)

On September 9, 2019, Moss's attorney emailed Wood to inquire about the status of Moss's case and indicated again Moss was interested in the 8214 Parking Control Officer position. (Dkt. No. 56-19 at 2.)

On September 20, 2019, the SFMTA received the essential function forms for the 8214 Parking Control Officer Position completed by Dr. Valmassy.  (Dkt. No. 56-20.)  In this form, Dr. Valmassy authorized Moss to lift 50 pounds but inserted the phrase, "limitation of walking, requires 15 min sitting per hour" in response to essential function number 1.  (*Id.*)  In response to essential function 3a and 3b, Dr. Valmassy wrote, "rest 15 min hour."  (*Id.*)  In response to essential function number 11, Dr. Valmassy wrote, "requires 15 min rest per hour."  (*Id.*)  At the end of the form, Dr. Valmassy wrote, "[d]ue to patient ongoing [symbol for "right"] ankle problem, he would benefit from sitting 15 min/hour over an eight-hour work day."  (*Id.*)

On September 20, 2019, Junior Management Assistant Amy Nuque forwarded these forms to Assistant Director-Parking Enforcement & Traffic Marie Holland to determine whether these

1   new restrictions prohibited Moss from performing the 8214 Parking Control Officer Position.

2   (Dkt. No. 56-21 at 2.)  On September 24, 2019, Holland responded by email: "[t]he below

3   restrictions does [sic] not meet the requirements for 8214 [Parking Control Officer]." (Dkt. No.

4   56-22 at 2.)

5        On October 7, 2019, SFMTA sent Moss a "Notice of Medical Separation."  (Dkt. No. 56-

6   23 at 2.)  In total, the City engaged in the interactive process with Moss for eight months: from

7   January through early October 2019.

8   **I.     PROCEDURAL HISTORY**

9        Moss brings five causes of action against the City: (1) Employment Discrimination:

10  Disability, under California Government Code § 12940, *et seq.*; (2) Wrongful Termination in

11  violation of Public Policy; (3) Failure to Prevent Discrimination, Harassment, and Retaliation in

12  Violation of FEHA, California Government Code §12940(k); (4) Violation of Civil Rights under

13  42 U.S.C. § 1983; and (5) Intentional Infliction of Emotional Distress.

**DISCUSSION**

14

15       Summary judgment is appropriate if "there is no genuine dispute as to any material fact

16  and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  The moving

17  party bears the burden of producing evidence negating an essential element of each claim on

18  which it seeks judgment or showing the nonmoving party cannot produce evidence sufficient to

19  satisfy its burden of proof at trial.  *Nissan Fire & Mar. Ins. Co., Ltd. v. Fritz Cos.*, 210 F.3d 1099,

20  1102 (9th Cir.2000).  "[T]he inferences to be drawn from the underlying facts contained in such

21  materials must be viewed in the light most favorable to the party opposing the motion."  *United*

22  *States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).  Once the moving party meets its burden, the

23  nonmoving party must show a material factual dispute exists.  *California v. Campbell*, 138 F.3d

24  772, 780 (9th Cir.1998).

25  **I.     EMPLOYMENT DISCRIMINATION: DISABILITY UNDER CAL. GOV'T CODE
        § 12940, *ET SEQ.* (FIRST CAUSE OF ACTION)**

26

27       Moss's first cause of action alleges "employment discrimination: disability" in violation of

28  California's FEHA, Cal. Gov't Code § 12940, *et seq.*  (Dkt. No. 30 at 4.)  Within that cause of

*United States District Court*
*Northern District of California*

8

1    action, Plaintiff alleges Defendant (1) failed to make reasonable accommodation for Plaintiff's

2    disabilities, Cal. Gov't Code § 12940(m); (2) failed to engage in the interactive process

3    contemplated by FEHA, Cal. Gov't Code § 12940(n); and (3) discriminated against Plaintiff

4    because of his disability, Cal. Gov't Code § 12940(a).  Defendant moves for summary judgment

5    on all three theories of this FEHA cause of action.

6    **A.    Failure to Make Reasonable Accommodation, Cal. Gov't Code §12940(m)**

7    Under California Government Code §12940, it is an unlawful employment practice "to fail

8    to make reasonable accommodation for the known physical or mental disability of an applicant or

9    employee" unless the employer demonstrates the accommodation would "produce undue

10   hardship."  Cal. Gov't Code § 12940(m).  "'Undue hardship' means an action requiring significant

11   difficulty or expense."  Cal. Gov't Code § 12926(u).

12   The elements of a failure to accommodate claim under California's FEHA are: "(1) the

13   plaintiff has a disability covered by the FEHA; (2) the plaintiff is a qualified individual (i.e., he or

14   she can perform the essential functions of the position); and (3) the employer failed to reasonably

15   accommodate the plaintiff's disability."  *Wilson v. County of Orange*, 169 Cal. App. 4th 1185,

16   1192 (2009).  The parties agree Moss has a disability covered by the FEHA, however, the City

17   argues Plaintiff has failed to identify evidence sufficient to support a finding he is qualified or that

18   the City failed to accommodate him.

19   **1.    Moss must satisfy the "qualified individual" element**

20   As a preliminary matter, Plaintiff, citing *Bagatti v. Department of Rehabilitation*, 97 Cal.

21   App. 4th 344, 360 (2002), argues § 12940(m) does not require a plaintiff to prove they are a

22   "qualified individual."  In *Bagatti*, the court analyzed § 12940(m), and held because the section

23   "does not require that an employee be 'a qualified individual with a disability'" and instead

24   "applies simply to 'an applicant or employee,'" there is no requirement a "plaintiff must show that

25   he or she is a 'qualified individual'" to "assert a claim for failure to accommodate" under FEHA.

26   97 Cal. App. 4th at 360-61.  So "the duty of an employer to provide reasonable accommodation

27   for an employee with a disability is broader under the FEHA than under the [Americans with

28   Disabilities Act of 1990]."  *Id*. at 361 n.4, 362.  However, five years after *Bagatti*, the California

United States District Court
Northern District of California

9

Supreme Court held "under the FEHA, a plaintiff must demonstrate that he or she was qualified for the position sought or held in the sense that he or she is able to perform the essential duties of the position with or without reasonable accommodation." *Green v. State of California*, 42 Cal. 4th 254, 267 (2007). Moreover, California Courts of Appeal since *Bagatti* have almost universally rejected its holding. *See, e.g., Nadaf-Rahrov v. Neiman Marcus Grp., Inc*., 166 Cal. App. 4th 952, 972 (2008) ("We disagree with *Bagatti*"); *Kaur v. Foster Poultry Farms LLC*, 83 Cal. App. 5th 320, 346 (2022), reh'g denied (Oct. 6, 2022) (explaining one element of a failure to accommodate claim is "the plaintiff is qualified to perform the essential functions of the position [held or desired]"); *Cuiellette v. City of Los Angeles*, 194 Cal. App. 4th 757, 766 (2011) (same); *Shirvanyan v. Los Angeles Cmty. Coll. Dist*., 59 Cal. App. 5th 82, 100 (2020) ("FEHA does not require reassignment if there is no vacant position the employee is qualified to fill.") (cleaned up). So, Plaintiff must demonstrate he was qualified, with or without reasonable accommodation, for either his previous position or another vacant position at an equivalent level to prevail on his failure to accommodate claim.

### 2. Whether Moss is a "qualified individual" for any position

To establish a failure to make a reasonable accommodation claim, Plaintiff bears "the burden of proving" he is qualified, or that he has the "ability to perform the essential functions of a job with accommodation." *Nadaf-Rahrov v. Neiman Marcus Grp., Inc.*, 166 Cal. App. 4th 952, 977 (2008). A "plaintiff proves he or she is a qualified individual by establishing that he or she can perform the essential functions of the position to which reassignment is sought, rather than the essential functions of the existing position." *Jensen v. Wells Fargo Bank*, 85 Cal. App. 4th 245, 256 (2000).

#### a. 7390 Welder classification

Plaintiff has established a genuine issue of material fact as to whether he was qualified for the 7390 Welder position. City human resources employees indicated the welding position requires "verification of welding experience." (Dkt. No. 55-1 at 3.) Moss testified that before he worked for the City he was a "welder for Pacific Steel." (Dkt. Nos. 58 ¶ 3; 53-2 at 3 (listing "Welder" in Moss's employment history in his January 2019 City employment application.) So,

United States District Court
Northern District of California

1    the evidence supports a finding Moss meets the only mandatory qualification of the position in the

2    record.

3        In *Nadaf-Rahrov v. Neiman Marcus Grp., Inc.*, 166 Cal. App. 4th 952, 969 (2008), for

4    example, a California Court of Appeal held an employee "raised a triable issue of fact about her

5    nonphysical qualifications for these positions" because "[s]he had some past experience" related to

6    the positions and there was "no evidence in the record that [employer] requires specific prior

7    experience or skills for any of these positions."  Similarly, here, Moss provides evidence he had

8    "some past experience as a welder" and there is no evidence in the record the City requires any

9    other prior experience or skills for the 7390 Welder position.  *See also Zamora v. Sec. Indus.*

10    *Specialists, Inc.*, 71 Cal. App. 5th 1, 48 (2021) (citing *Nadaf-Rahrov*, and finding summary

11    judgment inappropriate when employer "never discussed" possible job positions with employee

12    and "never actually offered him any alternative position" because "this lack of communication and

13    evidence that there were vacant positions" could lead a jury to find the employee may have been

14    able to "perform the essential functions of an available vacant position."); *Prilliman v. United Air*

15    *Lines, Inc.*, 53 Cal. App. 4th 935, 952 (1997) ("[O]n summary judgment, the moving party

16    employer has the burden of establishing that there were no vacant positions the employee could

17    have performed.").

18               **b.**      **8201 School Crossing Guard position**

19        Plaintiff has also established a genuine issue of material fact as to whether he was qualified

20    for the 8201 School Crossing Guard position.  In a letter from SFMTA Reasonable

21    Accommodation Coordinator, Mariana Valdez indicated:

22

23    Based on your City application and/or résumé, you may meet the minimum qualifications for positions
in the following job classifications at the SFMTA (along with the reason(s) why you were not

24    considered for placement):

| CLASSIFICATION | NO VACANCY | MEET MQ's | EXCEEDS BY 5% CURRENT SALARY | MEDICAL RESTRICTIONS | UNREACHABLE | NO INTEREST |
|---|---|---|---|---|---|---|
| 2708 – Custodian | ☐ | ☐ | ☐ | ☒ | ☐ | ☐ |
| 7454 - Traffic Signal Operator | ☒ | ☐ | ☐ | ☐ | ☐ | ☐ |
| 8201 - School Crossing Guard | ☐ | ☐ | ☐ | ☐ | ☐ | ☒ |
| 8214 - Parking Control Officer | ☐ | ☐ | ☐ | ☒ | ☐ | ☐ |

(Dkt. No. 53-1 at 2.)  Because Valdez only selected the box for "no interest" on the table, the record supports a finding Moss met all the other listed requirements for the position of 8201 School Crossing Guard.  Further, in Valdez's deposition she testified based on Moss's experience as a MUNI driver, the "school crossing guard" was one of the positions he "could possibly move to." (Dkt. No. 57-5 at 6.)  Interpreting all factual inferences in Moss's favor, Moss has thus demonstrated he was qualified for the 8201 School Crossing Guard position.

### 3.     Whether the City "failed to reasonably accommodate" Moss

A "[r]easonable accommodation" includes "part-time or modified work schedules, *reassignment to a vacant position,* . . . adjustment or modifications of examinations, training materials or policies, . . . and other similar accommodations for individuals with disabilities."  Cal. Gov't Code § 12926(p) (emphasis added).  Moss requested to be reassigned to another position. (Dkt. No. 56-5 at 2.)  "If the employee cannot be accommodated in his or her existing position and the requested accommodation is reassignment, an employer must make affirmative efforts to determine whether a position is available.  A reassignment, however, is not required if there is no vacant position for which the employee is qualified."  *Furtado v. State Pers. Bd.*, 212 Cal. App. 4th 729, 745 (2013) (cleaned up).  Reassignment is only required if the vacant position is "at the same level" as the employee's original position, as the employer is not required to promote the disabled employee.  *Id.*

### a.     7390 Welder classification

Moss has raised a genuine issue of material fact as to whether the City failed to reasonably accommodate him by failing to reassign him to the 7390 Welder position.  In March of 2019, "Moss expressed interest in welding classifications" when meeting with Yazmin Gonzalez, who works in Human Resources for the City.  (Dkt. No. 53 ¶ 20.)  Gonzalez identified two welding positions, including the 7390 Welder classification.  (*Id.* ¶ 21.)  However in April of 2019, she told Moss the "7390 Welder" position was not an "Eligible Position[]" under the Civil Service Rules because the compensation levels for each was higher than the 5% Salary Ceiling outlined" in the City's Civil Service Commission Rules.  (*Id.*)

United States District Court
Northern District of California

The City's Civil Service Commission Rule 415.13.4[3] states: "Placement shall be made only to a position for which the nearest salary step does not exceed five percent (5%) in excess of the employee's current actual salary." (Dkt. No. 51-4 at 9.) The City has not established that this rule barred Moss from the 7390 Welder position. At the time Moss applied for reasonable accommodations, he was paid "approximately $38 an hour." (Dkt. No. 57-4 at 34.) So, Moss could pursue a position so long as the "nearest salary step" was equal to or less than $39.90 per hour. Moss argues "nearest salary step" indicates the salary step that is the closest salary level to Moss's previous position. According to that interpretation, the "nearest salary step" for the 7390 Welder position in early 2019 was salary step one, which is $37.75 per hour, slightly less than Moss was making at the time he was injured. (Dkt. No. 57-13 at 2.)

The City disagrees with this interpretation of Civil Service Commission Rule 415.13.44. The City argues their "practice for implementing" the rule "is to compare the top level of the highest salary step ("Salary Ceiling") of the employee's current position with the Salary Ceiling of the employee's desired position." (Dkt. No. 50 at 8.) "If the Salary Ceiling of the employee's desired position is more than five percent (5%) higher than the Salary Ceiling of the employee's current position, then that employee is not eligible to transfer to that position as an accommodation." (*Id.*) Under this interpretation, Moss did not qualify for the 7390 Welder position because the highest salary step for the position was more than 5% higher than the highest salary step for Moss's previous position. (Dkt. No. 53 ¶ 22.) The City does not explain why it interpreted "nearest salary step," as indicated by the text of the rule, to mean "highest salary step." So, for purposes of summary judgment, the Court interprets the rule according to its plain language and thus in line with Moss's interpretation.

The City asserts it "is not reasonable" for the City to "violate[] the City's own policies or longstanding practices" of interpreting Civil Service Rule 415.13.14 to accommodate Moss. (Dkt. No. 60 at 3.) Not necessarily. "Ordinarily, the reasonableness of an accommodation is an issue

---

[3] Pursuant to Defendant's request, the Court takes Judicial Notice of San Francisco Civil Service Commission Rule 415, Rules related to the Employment of Persons with Disabilities. (Dkt. No. 51.)

1    for the jury." *Kaur v. Foster Poultry Farms LLC*, 83 Cal. App. 5th 320, 346 (2022), *reh'g denied*

2    (Oct. 6, 2022).  Moreover, if the City's own policies or longstanding practices violate FEHA, then

3    the City may be legally required to violate those policies or practices.  "Where a disabled

4    employee requests reassignment as an accommodation, FEHA requires the employer to offer the

5    employee 'comparable' or 'lower graded' vacant positions for which he or she is qualified."

6    *Atkins v. City of Los Angeles*, 8 Cal. App. 5th 696, 721 (2017), *as modified on denial of reh'g*

7    (Mar. 13, 2017).  Moss has established a genuine dispute as to whether the welding position was a

8    "comparable" or "lower graded" position to his previous position, as Moss has provided evidence

9    the first salary step on the welding position was lower than his previous salary.  Just because the

10   City has a practice to compare positions according to the highest salary ceiling rather than the

11   nearest salary step does not insulate that practice from FEHA liability.

12        In reply, the City argues this claim is "moot" since Moss "never provided verification of

13   employment experience to satisfy" the mandatory qualification for the position, so Moss

14   effectively rejected the welding position.  (Dkt. No. 60 at 6.)  However, according to the City's

15   own recitation of facts, on April 9, 2019, Gonzalez wrote a letter to Moss explaining the 7390

16   Welder position "exceeded the salary ceiling" set by Moss's 9163 Transit Operator position.  (Dkt.

17   Nos. 50 at 11; 53-5.)  Considering this letter, a trier of fact could find Moss had no reason to

18   believe he was eligible for this position, and therefore no reason to provide evidence of his

19   employment experience.

20        Neither side has identified direct evidence of whether there was a vacant 7390 Welder

21   position during the relevant period.  The Court must "draw reasonable inferences in the light most

22   favorable to" Plaintiff.  *Scott v. Harris*, 550 U.S. 372, 378 (2007).  The evidence permits the

23   reasonable inference there was a vacant 7390 Welder position.  The only reason cited by Gonzalez

24   for why she did not consider Moss for the 7390 Welder position was because of her interpretation

25   of the Civil Service Commission Rule regarding the salary ceiling of the position.  Further,

26   according to Gonzalez, the City's "public job website" listed "vacant positions."  (Dkt. No. 53 ¶

27   9.)  She testified it was her practice to "ask employees to [] review the public website for possible

28   Eligible Positions" and then tell her "if they identified a position or type of position they would

United States District Court
Northern District of California

like to pursue." (*Id.* ¶ 10.)  Moss testifies he "review[ed] the City's public website for positions" he thought he would be suitable for, and he "brought up" the welding positions to Gonzalez.  (Dkt. No. 58 ¶¶ 22, 25).  It is a reasonable inference Moss knew of the welding positions because they were listed as vacant positions on the City's public job website.

### b.    8201 School Crossing Guard position

Moss has also established a genuine issue of material fact as to whether the City's failure to reassign him to the 8201 School Crossing Guard position was reasonable.  There were ample vacant School Crossing Guard positions during the relevant period.  (Dkt. Nos. 55-1 at 12 (describing the Crossing Guard Program as "very understaffed" in July of 2019); 57-8 at 2 (indicating there were 25 vacant 8201 School Crossing Guard positions on July 29, 2019).)  As of July 29, 2019, Moss was ranked first in the "ADA: Seniority by Class" rankings for the position. (Dkt. No. 57-8 at 2.)  So, Moss has provided sufficient evidence there was a vacant school crossing guard position during the relevant period.  And, in any event, on summary judgment "the moving party employer has the burden of establishing that there were no vacant positions the employee could have performed." *Prilliman v. United Air Lines, Inc.*, 53 Cal. App. 4th 935, 952, (1997).

The City can prevail on summary judgment if it establishes a "reasonable accommodation was offered and refused."  *Jensen v. Wells Fargo Bank*, 85 Cal. App. 4th 245, 263 (2000).  The City identifies the letter Valdez sent to Moss on February 28, 2019 in which Valdez checked the box for "no interest" as to the School Crossing Guard position, (Dkt. No. 53-1 at 2), and argues given the letter, "[t]he Court should treat Moss as rejecting this possible accommodation."  (Dkt. Nos. 50 at 21.)  Moss, however, maintains he never told Valdez he was uninterested in the position, and he has no idea why she checked the box indicating he was uninterested in the position.  (Dkt. No. 57-4 at 5-6.)

Accepting Moss's testimony as true, the City unilaterally declared Moss uninterested in the position—despite no indication from Moss that was true.  The City argues "because Moss took no action to correct the City's understanding, he cannot now claim he was interested."  (Dkt. No. 50 at 21.)  But the letter itself only lists "no interest" as the reason why Moss was not considered for

15

placement in the school crossing guard position—and does not specify whether Moss was uninterested in the position, or whether the City was uninterested in Moss for that position. Later, the letter explains:

> Because at this time there are no current open and vacant positions within the SFMTA for which you qualify, are interested in, or which meet your medical restrictions, we are now referring your request to . . . conduct a citywide job search. The citywide job search will last for 60 days. . .

> We will continue conducting a search for SFMTA vacancies at the same time and continue to approve your leaves of absence.

(*Id.*)  Further, the letter states, "[a]s SFMTA positions are cleared and become vacant and reasonable accommodation applicants are placed in requested accommodations, your place on the seniority list will rise. We will keep you informed of the status your [sic] seniority as it relates to an identified open and vacant position."  (Dkt. No. 53-1 at 2.)

Making all inferences in Plaintiff's favor, and accepting Moss's testimony as true, Moss discussed the school crossing guard position with Valdez and never told the City he was uninterested in the position.  (Dkt. No. 57-4 at 5-6.)  Moss later received a letter in which Valdez indicated "no interest" in that position, without clarifying why she marked the "no interest" box. The City did not highlight or otherwise explain the impact of marking this "no interest" box.  The City also told Moss, despite marking the "no interest" box, they would "keep [him] informed of the status [of his] seniority" as to the school crossing guard position.  However, despite Moss eventually ranking first in the "ADA: Seniority by Class" rankings for the position (Dkt. No. 57-8 at 2), and despite that position being "very understaffed" (Dkt. No. 55-1 at 12), the City never communicated his seniority ranking as to the School Crossing Guard position to Moss.

Given the record, there is a genuine issue of material fact as to whether Moss rejected the position, or, whether it was reasonable for the City to treat Moss's failure to correct Valdez's letter as such a rejection.  Further, there is a dispute as to whether it was reasonable for the City to fail to communicate Moss's seniority ranking for the School Crossing Guard position to Moss given the City's earlier assurance it would do so.

United States District Court
Northern District of California

### c.     Whether the City was required to reassign Moss

The City, citing *Hanson v. Lucky Stores, Inc.*, asserts it had no duty to search for or reassign Moss to a vacant, equivalent position for which he was qualified because the City "accommodated" Moss by allowing him to be on disability leave for three years.  *Hanson v. Lucky Stores, Inc.*, 74 Cal. App. 4th 215 (1999).   That is incorrect.  In *Hanson*, the plaintiff "suffered a hand injury while on the job as a meatcutter and took a series of leaves of absence from work to recuperate."  *Id.* at 219.  After 16 months of leave, the plaintiff's employer offered the plaintiff the position of a part-time meat clerk, as "there was no other available position for which Hanson qualified."  *Id.* at 220, 226.  The plaintiff "refused the offer."  *Id.*  The California appellate court affirmed summary judgment for the employer because the employer "made two reasonable accommodations"—both the extended leave and the job offer—and the employer could not be held liable for the plaintiff's dissatisfaction with the offered accommodations.  *Id.* at 229.  The court explained "a finite leave can be a reasonable accommodation under FEHA, provided it is likely that at the end of the leave, the employee would be able to perform his or her duties."  *Id.* at 226.

*Hanson* differs significantly from this case.  First, in *Hanson*, the evidence was undisputed Hanson rejected his employer's job offer.  *Id.* at 219.  The City asserts Moss rejected the school crossing guard and welding position.  However, as discussed above, Moss has raised a genuine dispute as to whether it was the City, and not Moss, who rejected either the welding or school crossing guard position.

Second, the plaintiff in *Hanson* "did not request an accommodation."  *Id.*  In contrast, Moss specifically requested the City provide him with a reasonable accommodation and find him "another position with the SFMTA or City."  (Dkt. No. 56-5 at 2.)  As explained above, once an employee requests reassignment "an employer must make affirmative efforts to determine whether a position is available.'"  *Furtado*, 212 Cal. App. 4th at 745 (cleaned up); *see also Kaur v. Foster Poultry Farms LLC*, 83 Cal. App. 5th 320, 346 (2022), *reh'g denied* (Oct. 6, 2022) ("[A]n employer has a duty to reassign a disabled employee if an already funded, vacant position at the same level exists.") (cleaned up).

17

1    The City cites *Hanson* to argue "the employer is not obligated to choose the best

2    accommodation or the accommodation the employee seeks," so the City could have simply offered

3    Moss a finite period of leave rather than reassigning him.  *Hanson*, 74 Cal. App. 4th at 228

4    (cleaned up).  However, *Hanson* does not negate the City's duty to reassign Moss so long as Moss

5    requested reassignment and an equivalent, vacant position for which Moss was qualified existed.

6    *See Hanson, Inc.*, 74 Cal. App. 4th at 225 (employer has an "affirmative duty to make known to

7    the employee other suitable job opportunities with the employer and to determine whether the

8    employee is interested in, and qualified for, those positions, if the employer can do so without

9    undue hardship.").  Further, in more recent cases, the California Courts of Appeal have clarified

10   while "extended leave is an accommodation," granting an employee leave does not absolve the

11   company of attempting to find an accommodation that would result in the employee working.

12   *Nadaf-Rahrov*, 166 Cal. App. 4th at 968.  "If an employer can provide an accommodation other

13   than a medical leave, it cannot require an employee to take a leave."  *Zamora v. Sec. Indus.*

14   *Specialists, Inc.*, 71 Cal. App. 5th 1, 45 (2021); *see also* Cal. Code Regs. tit. 2, § 11068 ("When an

15   employee can work with a reasonable accommodation other than a leave of absence, an employer

16   may not require that the employee take a leave of absence.").  Moss testifies he "was open to any

17   position that would have accommodated [his] medical restrictions.  (Dkt. No. 58 ¶ 16.)  Moss has

18   established a dispute as to whether there were other vacant positions for which he was qualified.

19   Therefore, Moss has demonstrated a triable issue as to whether the City could have accommodated

20   him by placing him in one of those positions, rather than placing him on leave and then

21   terminating him.  *See A.M. v. Albertsons, LLC*, 178 Cal. App. 4th 455, 464–65 (2009) (holding

22   even if employer makes efforts at accommodation, a single failure to reasonably accommodate an

23   employee is sufficient to find liability); *Swanson v. Morongo Unified Sch. Dist.*, 232 Cal. App. 4th

24   954, 970 (2014), *as modified on denial of reh'g* (Dec. 23, 2014) (reversing summary judgment in

25   favor of employer and holding employer cannot prevail on summary judgment by demonstrating it

26   granted employee leave and therefore was not required to grant employee's request for a particular

27   job assignment because "an employer has a duty to reassign a disabled employee if an already

28   funded, vacant position at the same level exists") (quotations and citations omitted).

United States District Court
Northern District of California

*** 

For the reasons discussed, the City's motion for Summary Judgment on Moss's Failure to Make a Reasonable Accommodation claim, California Government Code §12940(m), is DENIED.

**B.     Failure to Engage in Interactive Process, Cal. Gov't Code §12940(n)**

It is unlawful for an employer to "fail to engage in a timely, good faith, interactive process with the employee or applicant to determine effective reasonable accommodations, if any, in response to a request for reasonable accommodation by an employee or applicant with a known physical or mental disability or known medical condition." Cal. Gov't Code § 12940 (n). "The employee must initiate the process unless his or her disability and the resulting limitations are obvious. Once initiated, the employer has a continuous obligation to engage in the interactive process in good faith." *Kaur v. Foster Poultry Farms LLC*, 83 Cal. App. 5th 320, 347 (2022*), reh'g denied* (Oct. 6, 2022) (cleaned up). "[T]he fact that an employer took some steps to work with an employee to identify reasonable accommodations does not absolve the employer of liability under section 12940(n). If the employer is responsible for a later breakdown in the process, it may be held liable." *Nadaf-Rahrov v. Neiman Marcus Grp., Inc.*, 166 Cal. App. 4th 952, 985 (2008). "Liability hinges on the objective circumstances surrounding the parties' breakdown in communication, and responsibility for the breakdown lies with the party who fails to participate in good faith." *Kaur*, 83 Cal. App. 5th at 348.

Plaintiff asserts his failure to engage in interactive process claim, in part, rests on the City's "lack of good faith" in communications about various job positions. (Dkt. No. 57 at 25-26.) The Court agrees the record supports a triable issue. As discussed above, communication around the welding position ended after the City erroneously told Moss the position exceeded the City's Civil Service Commission Rules as to maximum salary in an accommodation position. Making all inferences in Plaintiff's favor, communications surrounding the school crossing guard position broke down after the City erroneously marked Moss as uninterested in the position. Moss has therefore demonstrated a dispute of material fact as to whether the City was responsible for a "breakdown" in the interactive process.

Defendant argues FEHA requires an employer interact, but not necessarily accommodate

an employee. While this is true, the interactive requirement "is a continuing duty and the fact that the employer took some steps to identify a reasonable accommodation does not absolve the employer of liability for failure to engage in the interactive process if it is responsible for a later breakdown in the process." *Zamora v. Sec. Indus. Specialists, Inc.*, 71 Cal. App. 5th 1, 41 (2021); *see also Kaur*, 83 Cal. App. 5th at 347–48 ("Each party must participate in good faith, undertake reasonable efforts to communicate its concerns, and make available to the other information [that] is available, or more accessible, to one party.") (cleaned up); *Scotch v. Art Inst. of California*, 173 Cal. App. 4th 986, 1013 (2009) ("[T]he employer's obligation to engage in the interactive process extends beyond the first attempt at accommodation and continues when the employee asks for a different accommodation or where the employer is aware that the initial accommodation is failing and further accommodation is needed."). An employee can survive summary judgment on a failure to interact claim by demonstrating the employer's "lack of communication and evidence that there were vacant positions," since then "a jury could find" the employer "failed to engage in or caused a breakdown in the interactive process by refusing to provide information about available positions that might have assisted [the employee] in returning to modified work and avoiding the layoff." *Zamora*, 71 Cal. App. 5th at 48. Moss has provided evidence the City failed to communicate relevant information about both the school crossing guard and welding position that might have assisted Moss in returning to work. While the City did interact with Moss, Moss has raised a genuine issue of material fact as to whether the breakdown in the process can be attributed to the City.

So, Defendant's motion for summary judgment as to Moss's failure to engage in the interactive process claim, Cal. Gov't Code §12940(n), is DENIED. Plaintiff has raised a genuine dispute of material fact as to whether the City engaged in the interactive process in good faith, and whether the breakdown in communications between Moss and the City was the responsibility of the City.

### C.     Disability Discrimination California Government Code §12940(a)

California Government Code §12940(a) makes it "unlawful" for an employer "because of . . . medical condition . . . to discriminate against the person in compensation or in terms,

United States District Court
Northern District of California

conditions, or privileges of employment.  Cal. Gov't Code § 12940(a).  "In a reasonable-accommodation case with an adverse employment action, a failure to make a reasonable accommodation is direct evidence of disability discrimination."  *Urbina v. Comcast Cable Communications Management*, No. 16-cv-03948-LB, 2017 Westlaw 6550506, at *11 (N.D. Cal. 2017), citing *Capote v. CSK Auto, Inc.*, No. 12-cv-02958-JST, 2014 Westlaw 1614340, at *7 (N.D. Cal. 2014).  Moss suffered an adverse employment action: he was medically separated from his position with the city.  (Dkt. No. 56-23 at 2.)

Therefore, since Moss's failure to make a reasonable accommodation claim survives, Defendant's motion for summary judgment as to Moss's disability discrimination claim, Cal. Gov't Code §12940(a), is DENIED.

## II.    WRONGFUL TERMINATION IN VIOLATION OF PUBLIC POLICY (SECOND CAUSE OF ACTION)

The City moves to dismiss Moss's claim for Wrongful Termination in Violation of Public Policy because "such common law claims cannot be stated against a public entity."  (Dkt. No. 50 at 5.)  Moss concedes this claim is not available as a matter of law.  (Dkt. No. 57 at 8.)  So, Defendant's motion for summary judgment on Plaintiff's wrongful termination in violation of public policy claim is GRANTED.

## III.    FAILURE TO PREVENT DISCRIMINATION, HARASSMENT, AND RETALIATION IN VIOLATION OF FEHA, CAL. GOVT. CODE § 12940(K) (THIRD CAUSE OF ACTION)

FEHA prohibits an employer from "fail[ing] to take all reasonable steps necessary to prevent discrimination and harassment from occurring." Cal. Gov't Code § 12940(k).  To prove a failure-to-prevent claim, Plaintiff must establish: (1) Plaintiff was subjected to discrimination, harassment, or retaliation; (2) Defendant failed to take all reasonable steps to prevent discrimination, harassment, or retaliation; and (3)  "this failure caused plaintiff to suffer injury, damage, loss or harm."  California Civil Jury Instructions 12.11; *see also Leland v. City & Cnty. of San Francisco*, 576 F. Supp. 2d 1079, 1103 (N.D. Cal. 2008).  Termination from employment is an injury sufficient to support recovery under a §12940(k) failure to prevent discrimination claim. *See Gemini Aluminum Corp.*, 122 Cal.App.4th at 1025.

United States District Court
Northern District of California

1

2

3

4

5

6

Plaintiff's claim mentions "retaliation" and "harassment," but Plaintiff's response to the Summary Judgment motion does not identify any facts that support a finding that Plaintiff was retaliated against or harassed.  It is not the Court's duty to "scour the record in search of a genuine issue of triable fact."  *Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996).  Plaintiff has provided no evidence of retaliation or harassment, so Defendant's motion is GRANTED as to those theories.

7

8

9

10

11

12

13

14

15

However, as discussed above, Plaintiff has provided evidence Defendant discriminated against him because of his disability.  "[A] failure to prevent discrimination claim is essentially derivative of a discrimination claim."  *Achal v. Gate Gourmet, Inc.*, 114 F. Supp. 3d 781, 804 (N.D. Cal. 2015) (cleaned up); *see also Ravel v. Hewlett-Packard Enter., Inc.*, 228 F. Supp. 3d 1086, 1098–99 (E.D. Cal. 2017) ("Because plaintiff's FEHA disability discrimination claim survives defendant's motion to dismiss, her failure to prevent discrimination claim survives the motion as well.").  Genuine issues of material fact remain as to whether the City took reasonable steps necessary to prevent unlawful conduct.  So, Defendant's motion for summary judgment as to Plaintiff's claim Defendant failed to prevent discrimination is DENIED.

16

## IV.   VIOLATION OF CIVIL RIGHTS UNDER 42 U.S.C. § 1983 (FOURTH CAUSE OF ACTION)

17

18

19

20

21

22

To establish a 42 U.S.C. § 1983 claim, Plaintiff must establish Defendants "(1) acting under color of State law, (2) caused (3) Plaintiffs, as U.S. citizens or persons within the jurisdiction of the United States, (4) a deprivation of rights, privileges, or immunities secured by the Constitution and laws."  *Chaudhry v. Aragon*, 68 F.4th 1161, 1171 (9th Cir. 2023) "Section 1983 requires" a plaintiff "to demonstrate a violation of federal law, not state law."  *Galen v. Cnty. of Los Angeles*, 477 F.3d 652, 662 (9th Cir. 2007).

23

24

25

26

27

The City moves to dismiss Moss's claim for violation of 42 U.S.C. § 1983 because Moss has not shown facts of any violation of a federal right or that the city is liable under *Monell v. Department of Social Services*, 436 U.S. 658 (1978).  Moss admits he only alleged "state law" in his complaint and did not "identify the federal right being violated."  (Dkt. No. 57 at 30.)  Moss asserts he "could have provided additional information" which "could reasonably lead to a

28

United States District Court
Northern District of California

1    contention he was deprived of procedural due process" or "equal protection" under the Fourteenth

2    Amendment to the United States Constitution if this issue had been raised earlier.  (*Id.* at 30-31.)

3    However, Moss does not provide any such additional information, nor does Moss submit a 56(d)

4    affidavit or declaration requesting more time to develop such facts.  *See* Fed. R. Civ. Pro. 56(d).

5         Moreover, as pled, Moss's § 1983 cause of action duplicates his California-law based

6    causes of action.  Moss's amended complaint specifically alleges his § 1983 cause of action is

7    based on Defendant's discrimination by "failing to make reasonable accommodations" and failing

8    "to engage in the interactive process contemplated by the Fair Employment and Housing Act."

9    (Dkt. No. 30 ¶¶ 44-45.)  As the cause of action was specifically pled, the Court declines to give

10   Moss leave to amend this cause of action now, at the summary judgment stage.

11        So, Defendant's motion for summary as to Plaintiff's 42 U.S.C. § 1983 claim is

12   GRANTED.

13   **V.     INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS (FIFTH CAUSE OF
            ACTION)**

14
          The City moves to dismiss Moss's claim for Intentional Infliction of Emotional Distress

15   because "such common law claims cannot be stated against a public entity."  (Dkt. No. 50 at 5.)

16   Moss concedes this claim is not available as a matter of law.  (Dkt. No. 57 at 8.)  So, Defendant's

17   motion for summary judgment on Plaintiff's intentional infliction of emotional distress claim is

18   GRANTED.

19
     **VI.    JURISDICTION**
20
          Defendant removed this case pursuant to 28 U.S.C. § 1441(b), asserting the Court had
21
     original jurisdiction because of Plaintiff's 42 U.S.C. § 1983 claim.  (Dkt. No. 1-1.)  While the
22
     Court dismisses the 42 U.S.C. § 1983 claim, the Court retains supplemental jurisdiction over the
23
     case.  *See* 28 U.S.C.A. § 1367.  While "in the usual case in which all federal-law claims are
24
     eliminated before trial, the balance of factors to be considered under the pendent jurisdiction
25
     doctrine—judicial economy, convenience, fairness, and comity—will point toward declining to
26
     exercise jurisdiction over the remaining state-law claims," *Carnegie-Mellon Univ. v. Cohill*, 484
27
     U.S. 343, 350 n.7 (1988), the Court finds this is an unusual case that warrants this case retaining
28

United States District Court
Northern District of California

1   jurisdiction.  Moss filed this case as an unrepresented litigant.  (Dkt. No. 1 at 19.)  Latham &

2   Watkins LLP volunteered to undertake this representation at the request of the Federal Pro Bono

3   Project.  (Dkt. No. 13.)  Since Plaintiff's counsel's appointment, Plaintiff's counsel has dedicated

4   significant time and effort to representing Plaintiff at settlement conferences, participating in

5   discovery, and briefing Plaintiff's response to this summary judgment motion.  So, considering the

6   factors of judicial economy, convenience, fairness, and comity, the Court retains jurisdiction, as

7   remanding the case would exert significant hardship on Plaintiff's volunteer counsel.

8                                          **CONCLUSION**

9          For the reasons discussed above, the Court GRANTS Defendant's motion for summary

10  judgment as to Plaintiff's wrongful termination in violation of public policy claim (second cause

11  of action), failure to prevent harassment or retaliation in violation of FEHA, Cal. Gov't Code §

12  12940(k) claim (third cause of action), violation of civil rights under 42 U.S.C. § 1983 claim

13  (fourth cause of action), and intentional infliction of emotional distress claim (fifth cause of

14  action).  The Court DENIES Defendant's motion for summary judgment as to Plaintiff's

15  employment discrimination claims based on disability under FEHA, Cal. Gov't Code § 12940, *et*

16  *seq.* (first cause of action) and failure to prevent discrimination in violation of FEHA, Cal. Gov't

17  Code § 12940(k) (third cause of action).

18         The Court will hold a further case management conference on February 29, 2024 at 1:30

19  p.m. via Zoom video.  An updated joint case management conference statement that includes a

20  proposed jury trial date is due one week in advance.

21         This Order Disposes of Dkt. No. 49.

22         **IT IS SO ORDERED.**

23  Dated: February 2, 2024

24

25

26  JACQUELINE SCOTT CORLEY
    United States District Judge

27

28

                                              24