1
2
3
4                    UNITED STATES DISTRICT COURT

5                   NORTHERN DISTRICT OF CALIFORNIA

6

7    CECIL H. MOSS,                          Case No.  22-cv-01252-JSC

8                   Plaintiff,

9          v.                                **ORDER RE: DEFENDANT'S MOTION
                                             FOR JUDGMENT AS A MATTER OF
10   CITY AND COUNTY OF SAN                   LAW AND PLAINTIFF'S MOTION TO
     FRANCISCO,                               AMEND JUDGMENT**

11                  Defendant.               Re: Dkt. Nos. 190, 191, 196

12

13          Cecil H. Moss, Jr. sued the City and County of San Francisco ("the City") alleging

14   disability discrimination in violation of the California Fair Housing and Employment Act

15   ("FEHA").  After a five-day trial, the jury rendered a verdict for Mr. Moss on both his claims,

16   finding the City (1) failed to provide reasonable accommodation for Mr. Moss's disability, and (2)

17   failed to engage in a good-faith interactive process.  The jury awarded Mr. Moss $255,116 in lost

18   wages.  Accordingly, on January 28, 2025, the Court entered judgment in favor of Mr. Moss and

19   against the City in the amount of $255,116.  (Dkt. No. 172.)

20          Pending before the Court are (1) the City's motion for a new trial, or in the alternative, for

21   judgment notwithstanding the verdict; and (2) Mr. Moss's motion to amend the judgment.  Having

22   carefully considered the parties submissions, and with the benefit of oral argument on April 29,

23   2025, the Court DENIES the City's motion.  Substantial evidence supports the jury's verdict, and

24   the City fails to demonstrate how any of the asserted errors caused substantial prejudice.  And the

25   Court GRANTS in part and DENIES in part Mr. Moss's motion to amend the judgment.  The

26   Court amends the judgment to correct a calculation error and to award post-judgment interest.  But

27   because disputes of fact rendered the damages amount uncertain, Mr. Moss is not entitled to

28   prejudgment interest.

United States District Court
Northern District of California

## DISCUSSION

### I.   THE CITY'S MOTION FOR JUDGMENT AS A MATTER OF LAW

A Rule 50(b) motion for judgment as a matter of law is proper when "the evidence permits only one conclusion and that conclusion is contrary to the jury's verdict." *Martin v. California Dep't of Veterans Affs.*, 560 F.3d 1042, 1046 (9th Cir. 2009). The court must view the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor. *E.E.O.C. v. Go Daddy Software, Inc.*, 581 F.3d 951, 961 (9th Cir. 2009). The court "may not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000). A "jury's verdict must be upheld if it is supported by substantial evidence, which is evidence adequate to support the jury's conclusion, even if it is possible to draw a contrary conclusion." *Pavao v. Pagay*, 307 F.3d 915, 918 (9th Cir. 2002).

A Rule 50(b) "is not a freestanding motion" but "a renewed Rule 50(a) motion." *Go Daddy Software*, 581 F.3d at 961. As the Ninth Circuit explained:

> Because it is a renewed motion, a proper post-verdict Rule 50(b) motion is limited to the grounds asserted in the pre-deliberation Rule 50(a) motion. Thus, a party cannot properly raise arguments in its post-trial motion for judgment as a matter of law under Rule 50(b) that it did not raise in its preverdict Rule 50(a) motion.

*Id.* (cleaned up).

During trial, the City orally "mov[ed] for relief under Rule 50(a) on the following grounds":

> (1) "there is no competent evidence that . . . contradict[s] . . . Ms. Holland's testimony and Dr. Valmassy's report requirement of 15 minutes of sitting per hour as being incompatible with the essential functions of the 8214 parking control officer position";
>
> (2) "there is . . . no competent testimony of evidence regarding the essential functions of the parking control officer role";
>
> (3) "other than the 8214 parking control officer position, there is no evidence in the record establishing the essential functions for any of the other roles";
>
> (4) "[f]or the 8214 parking control officer role, there is no competent evidence that a vacancy existed at any relevant time";
>
> (5) "there is no competent evidence that Mr. Moss provided verification of his prior experience as a 2708 custodian and 9102 transit car cleaners -- transit car cleaner positions"; and
>
> (6) the City's affirmative defense "should be established as a matter of law."

2

1    (Dkt. No. 177 at 19-24.)  The City now moves for judgment as a matter of law under Rule 50(b)

2    on both the failure to accommodate and the failure to engage in the interactive process claims.

3            **A.**        **Failure to Accommodate**

4            On Claim One, the jury found the City failed to provide reasonable accommodation for

5    Mr. Moss's disability.  (Dkt. No. 169 at 1.)  The City insists it is entitled to judgment as a matter

6    of law on this claim because Mr. Moss did not establish there was a vacant eligible position in

7    which he could be accommodated.  According to the City, Mr. Moss had to "show both that he

8    possesse[d] the qualifications for a position, meaning the relevant skills and background

9    professionally required for a position, and that he [could] physically perform the essential

10   functions of the job, meaning those functions for which the job was created and which are critical

11   to the performance of the job."  (Dkt. No. 196 at 6-7.)  The City argues there was no position for

12   which Mr. Moss established both requirements.

13           As an initial matter, while the City's Rule 50(a) motion raises the essential functions

14   argument, it does not raise the minimum qualifications argument with respect to the School

15   Crossing Guard position.  A "Rule 50(b) may be satisfied by an ambiguous or inartfully made

16   motion under Rule 50(a)" to avoid harsh results.  *See Go Daddy Software*, 581 F.3d at 961.  But

17   even construing "verification" as "minimum qualification," the City's Rule 50(a) motion stated

18   "there [was] no competent evidence that Mr. Moss provided verification of his prior experience as

19   a 2708 custodian and 9102 transit car cleaners" positions.  (Dkt. No. 177 at 23.)  The City did not

20   argue a lack of evidence regarding Mr. Moss's verification for the 8201 School Crossing Guard

21   position.  And as the parties agree, the jury's verdict was based on the School Crossing Guard

22   position.  (Dkt. No. 196 at 19 (the City's motion stating the "amount awarded to Plaintiff is based

23   on Plaintiff's assertion that he would have earned that amount between the time he received the

24   job and trial if Plaintiff had been accommodated via the School Grossing Guard position."); Dkt.

25   No. 200 at 8-9 (Mr. Moss's motion stating "the relevant position for . . . the Motion for a judgment

26   notwithstanding is the Crossing Guard position, the position on which the verdict was based").)

27   The City's reply ignores that its Rule 50(b) motion improperly raises a new argument.

28           Regardless, judgment as a matter of law is inappropriate because substantial evidence

United States District Court
Northern District of California

3

supports a finding Mr. Moss was qualified for the School Crossing Guard position.  Mariana

Valdez, a reasonable accommodation coordinator, testified the seven positions listed in Trial

Exhibit 13 (Docket No. 178-9)—including the 8201 School Crossing Guard position—were

positions for "which Mr. Moss met the minimum qualifications."  (Dkt. No. 175 at 46.)  This

alone is substantial evidence supporting the jury's finding that "Cecil Moss was able to perform

the essential job duties of a vacant City position."  (Dkt. No. 169 at 1.)  Drawing all reasonable

inferences in Mr. Moss's favor, a jury could conclude from this testimony Mr. Moss both

possessed the minimum qualifications and was able to perform the essential functions of the

School Crossing Guard position.  On reply, the City argues Ms. Valdez's "testimony was clarified

repeatedly and clearly by witness Nuque and other witnesses, who stated that regardless of

placement on any list, a Plaintiff must provide verification for the [minimum qualification]'s for

the position and be able to perform the essential functions of the position (with or without

accommodation.)"  (Dkt. No. 204 at 5.)  But it was not simply Mr. Moss's placement on a

seniority list but the testimony he "met the minimum qualifications" for the School Crossing

Guard position that constitutes substantial evidence.  (Dkt. No. 175 at 46.)  And there was

additional evidence supporting the jury's conclusion.  For example, on a City form admitted into

evidence, the "medical restrictions" for School Crossing Guard box was not checked, although it

was checked for other positions:

| CLASSIFICATION | NO VACANCY | MEET MQ's | EXCEEDS BY 5% CURRENT SALARY | MEDICAL RESTRICTIONS | UNREACHABLE | NO INTEREST |
|---|---|---|---|---|---|---|
| 9102 – Transit Car Cleaner | ☐ | ☐ | ☐ | ☒ | ☐ | ☐ |
| 9110 - Fare Collection Receiver | ☒ | ☐ | ☐ | ☐ | ☐ | ☐ |
| 9126 - Transit Traffic Checker | ☒ | ☐ | ☐ | ☐ | ☐ | ☐ |

| CLASSIFICATION | NO VACANCY | MEET MQ's | EXCEEDS BY 5% CURRENT SALARY | MEDICAL RESTRICTIONS | UNREACHABLE | NO INTEREST |
|---|---|---|---|---|---|---|
| 2708 – Custodian | ☐ | ☐ | ☐ | ☒ | ☐ | ☐ |
| 7454 - Traffic Signal Operator | ☒ | ☐ | ☐ | ☐ | ☐ | ☐ |
| 8201 - School Crossing Guard | ☐ | ☐ | ☐ | ☐ | ☐ | ☒ |
| 8214 - Parking Control Officer | ☐ | ☐ | ☐ | ☒ | ☐ | ☐ |

(Dkt. No. 178-9 at 2-3.)  From this evidence, jurors could reasonably infer Mr. Moss could

perform the essential functions of the School Crossing Guard position.  In addition, the School

Crossing Guard job description, which was admitted into evidence, identifies "Job Related and

United States District Court
Northern District of California

Essential Functions." (Dkt. No. 179-14.) So, the Court DENIES the City's request for judgment as a matter of law on the failure to accommodate claim.

### B.    Failure to Engage in Interactive Process

On Claim Two, the jury found the City failed to engage in a good-faith interactive process. (Dkt. No. 169 at 2.) The City contends judgment as a matter of law is appropriate on this claim for two reasons. First, the City reasserts its argument that Mr. Moss failed to establish he possessed the minimum qualifications and could perform the essential functions for any position. For the reasons discussed above, the Court disagrees.

Second, the City argues "[n]o reasonable jury could conclude that anyone other than Moss was responsible for this breakdown in the [interactive] process." (Dkt. No. 196 at 10.) As the Court observed at oral argument, the City's 50(a) motion did not seek relief on this basis. For this reason, judgment as a matter of law on Claim Two is improper. *See Go Daddy Software*, 581 F.3d at 961 (stating "a party cannot properly raise arguments in its post-trial motion for judgment as a matter of law under Rule 50(b) that it did not raise in its preverdict Rule 50(a) motion").

Even had the City included this argument in its Rule 50(a) motion, judgment as a matter of law would still be improper. The City's Rule 50(b) motion focuses on Mr. Moss not providing verification of his caregiving experience for the Health Worker III position. But even the City's argument in its motion reveals disputes of fact. For example, the City notes that while Mr. Moss asked the reasonable accommodation coordinator if she "could help him in some way to obtain the verification," the coordinator "testified that this conversation never happened, and if it had she would have made a record of it in her file." (Dkt. No. 196 at 10.) But a jury could find the conversation did happen, which would support a finding the City was responsible for the breakdown. For purposes of a Rule 50(b) motion, the Court must view the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor.

There is substantial evidence supporting the jury's conclusion Mr. Moss "was willing to participate in good faith in an interactive process to determine whether reasonable accommodation could be made." (Dkt. No. 169 at 2.) For example, Mr. Moss testified he attended meetings and had phone calls with reasonable accommodation staff at the Municipal Transportation Authority

5

1    and the City's human resources department.  (Dkt. No. 173 at 200, 202-03, 217-18.)  Mr. Moss

2    also testified regarding his efforts to increase his lifting requirements for the Parking Control

3    Officer position.  (Dkt. No. 174 at 34, 42-43.)

4         Likewise, substantial evidence supports the jury's finding the City "fail[ed] to participate

5    in a timely, good-faith interactive process with Cecil Moss to determine whether reasonable

6    accommodation could be made."  (Dkt. No. 169 at 2.)  For example, although "the Crossing Guard

7    Program [was] very understaffed" in July 2019, (Dkt. No. 178-17 at 12), and although Mr. Moss's

8    "ranking for the 8201 school crossing guard position rose to Number 1," (Dkt. No. 176 at 211), the

9    City did not contact Mr. Moss about the School Crossing Guard position.  (Dkt. No. 176 at 211.)

10   While on the City's form the "No Interest" box was checked for the School Crossing Guard

11   position, (Dkt. No. 178-9 at 2), Mr. Moss testified the reasonable accommodation coordinator

12   "told [him] not to be interested" in that position.  (Dkt. No. 107 at 107.)  According to Mr. Moss,

13   the reasonable accommodation coordinator told him the School Crossing Guard position "didn't

14   make anywhere close to what you make an hour, so we're just going to X this out." (*Id.*)  Mr.

15   Moss also testified that had he "been told that he was eligible for the crossing guard position and

16   that's all that there was," he would have taken the position because "it's like an honor badge to be

17   working for the City" and "the hardest thing for you to do is get your foot in the door." (Dkt. No.

18   173 at 213.)  From this evidence, the jury could have reasonably found that by failing to re-inquire

19   about Mr. Moss's interest in the School Crossing Guard position, the City failed to participate in a

20   good-faith interactive process.

21        To grant the City's Rule 50(b) motion, the evidence must "permit[] only one conclusion":

22   that Mr. Moss was responsible for the breakdown in the interactive process.  *See Martin*, 560 F.3d

23   at 1046.  Because substantial evidence supports a contrary finding, the Court DENIES the City's

24   Rule 50(b) motion on the failure to engage in the interactive process claim.

25   **II.    THE CITY'S MOTION FOR A NEW TRIAL AND/OR REMITTER**

26        In the alternative, the City moves for a new trial on the failure to accommodate and failure

27   to engage in the interactive process claims.  The City also argues the Court should "grant a new

28   trial as to damages and remittitur."  (Dkt. No. 204 at 9.)  The Court addresses the City's three

United States District Court
Northern District of California

1  arguments for a new trial, then turns to its arguments regarding remittitur/damages.

2        **A.    Clear Weight of Evidence**

3        First, the City argues the failure to accommodate and failure to engage in the interactive

4  process verdicts "were against the clear weight of the evidence." (Dkt. No. 196 at 11.) Even if the

5  claims "were supported by some evidence," the City contends "the jury's verdicts were

6  nevertheless against the clear weight of evidence." (*Id.* at 11-12.) As the Ninth Circuit explained:

7             Upon the Rule 59 motion of the party against whom a verdict has been

8             returned, the district court has the duty to weigh the evidence as the court saw it, and to set aside the verdict of the jury, even though

9             supported by substantial evidence, where, in the court's conscientious opinion, the verdict is contrary to the clear weight of the evidence.

10  *Molski v. M.J. Cable, Inc.*, 481 F.3d 724, 729 (9th Cir. 2007) (cleaned up).

11        As an initial matter, the City provides no factual or legal analysis as to how Mr. Moss's

12  claims, while supported by substantial evidence, were contrary to the clear weight of evidence.

13  Rather, the City requests a new trial "[f]or the same reasons set forth" in its Rule 50(b) motion for

14  judgment as a matter of law. It does not articulate why those same arguments prevail—or to what

15  extent they are different—under the "clear weight of the evidence" standard for a new trial. (*Id.*)

16        Moreover, the cases the City cites are easily distinguishable from the present case. *See*

17  *Molski*, 481 F.3d at 731 (concluding the verdict was against the clear weight of evidence when

18  "the record contain[ed] no evidence in support of the verdict," which contracted "undisputed

19  testimony from" the plaintiff and defendant); *Murphy v. City of Long Beach*, 914 F.2d 183, 187

20  (9th Cir. 1990) (affirming new trial given the trial court's "firm conviction" that multiple errors,

21  including an improper instruction on the emotional distress claim and its failure to instruct on

22  comparative negligence, resulted in a miscarriage of justice).

23        Because the City fails to argue at all—let alone persuasively—that the present verdict is

24  against the great weight of evidence, the City's motion for a new trial on this ground is DENIED.

25        **B.    Mr. Moss's Testimony about Injury**

26        Second, the City requests a new trial on both claims, arguing allowing Mr. Moss to testify

27  as to his injury without allowing impeachment was error and prejudicial.

28        This issue was litigated at the pretrial conference. Mr. Moss filed Motion in Limine No. 2

1   to exclude evidence regarding his involvement in other litigation, including his workers'

2   compensation claim.  (Dkt. No. 108.)  The City opposed on the ground Mr. Moss should not be

3   able to "introduce evidence of the pain and suffering he experienced" from his injury while

4   "prevent[ing] the City from questioning the facts or credibility of any of his medical narrative" by

5   "exclud[ing] evidence of the proceedings currently under way on his current Workers

6   Compensation matter for the same injury."  (*Id.* at 7.)  The Court ruled Mr. Moss could provide

7   "some narrative"—for example, that "[h]e was injured on the job," he "had surgery," and he "had

8   this long to recover"—to provide jurors context about the period between Mr. Moss's injury in

9   July 2016 and his initiation of the reasonable accommodation process in January 2019.  (Dkt. No.

10  196-1 at 201-02.)  But, the Court ruled, Mr. Moss could not testify that defective brakes caused the

11  injury or that his treatment was prolonged due to the poor care he received from the City's doctors,

12  as those issues were irrelevant to Mr. Moss's disability discrimination claims.  (*Id.*)

13        At trial, in accordance with the Court's order, Mr. Moss's testimony about his injury was

14  limited.  He testified that while at work, he "obtained an injury."  (Dkt. No. 173 at 190.)  Because

15  his ankle was "three or four times bigger than it was supposed to be," he "started going to the

16  doctor about [his] ankle."  (*Id.* at 190-91.)  Mr. Moss testified he went on medical leave,

17  underwent surgery where they "put two titanium screws in [his] ankle," and did physical therapy

18  to rehabilitate his ankle.  (*Id.* at 191-92.)

19        Following this testimony, the City reasserted its request to impeach Mr. Moss, arguing Mr.

20  Moss "opened the door on Motion in Limine Number 2" by "talk[ing] a lot about his injury."

21  (Dkt. No. 174 at 13.)  The Court disagreed, noting there was no mention of defective breaks or

22  that the injury occurred while Mr. Moss was driving the bus.  (*Id.* at 13-16.)  Further, the City

23  could neither identify which element of Mr. Moss's claim was implicated nor articulate how it was

24  prejudiced by Mr. Moss's testimony.  (*Id.* at 14-18.)  So, the Court overruled the City's request to

25  impeach Mr. Moss on this testimony.

26        Through the present motion, the City raises this issue again and again fails to show how

27  excluding impeachment evidence caused substantial prejudice.  *See Harper v. City of Los Angeles*,

28  533 F.3d 1010, 1030 (9th Cir. 2008) ("A new trial is only warranted when an erroneous

United States District Court
Northern District of California

8

1    evidentiary ruling 'substantially prejudiced' a party.").  The jury instructions stated "[t]he parties

2    agree Mr. Moss had a physical disability and the City knew of Mr. Moss's physical disability,"

3    (Dkt. No. 166 at 12), so any impeachment evidence about Mr. Moss's injury or the rehabilitation

4    process would have been collateral to the claims and the jury's verdict.

5          Moreover, the City's citations are inapposite.  In *United States v. Castillo*, 181 F.3d 1129,

6    1131 (9th Cir. 1999), the "jury convicted [the defendant] of importation and possession of

7    marijuana with intent to distribute."  On appeal, the defendant argued "the district court erred in

8    admitting evidence of a prior arrest for cocaine possession."  *Id.*  The Ninth Circuit affirmed the

9    conviction.  Given the defendant's "sweeping denial of any association with drugs" and portrayal

10   of himself as a "'quintessential model citizen' who would never have anything to do with drugs,"

11   the district court's decision to admit "extrinsic evidence concerning the earlier arrest" for purposes

12   of impeachment by contradiction was not an abuse of discretion.  *Id.* at 1131-32.  Admitting a

13   prior drug-related arrest in a criminal case involving a drug-related charge in response to a

14   defendant's denial of any association with drugs, which was "often not responsive to questions

15   posed by his lawyer," is different from the present case, where the City sought to admit

16   impeachment evidence on an issue irrelevant to any claim and in response to testimony that was

17   limited to providing jurors necessary context.  *See id.* at 1132.

18         The City also cites *Francis v. Clark Equip. Co.*, 993 F.2d 545 (6th Cir. 1993), when the

19   Sixth Circuit found it was error to preclude the defendant from presenting rebuttal evidence on a

20   theory the plaintiff abandoned partway through trial.  The Sixth Circuit explained it was unfair to

21   allow the plaintiff "to selectively introduce pieces of evidence relating to a risk-benefit theory for

22   his own advantage without allowing defendant the opportunity to present rebuttal evidence to

23   rebut plaintiff's risk-benefit testimony." *Id.* at 550.  That is, the jury was allowed "to hear

24   plaintiff's counsel's argument that [the defendant] ignored the 'excessive preventable danger'

25   posed by an alleged defect without hearing defendant['s] . . . response to this argument." *Id.* at

26   551.  There is no similar prejudice in this case.  The evidence the City sought to introduce was not

27   about a theory of liability and it was not about any failure on the City's part; rather, it was about

28   Mr. Moss's injury and rehabilitation process.  Even accepting the City's present assertion that Mr.

United States District Court
Northern District of California

9

1   Moss's testimony about his injury was "exaggerated or untrue," (Dkt. No. 196 at 15), there is no

2   prejudice to the City—let alone substantial prejudice—given the parties' stipulation that Mr. Moss

3   had a disability.  So, the City's motion for a new trial on this ground is DENIED.

4          **C.    Medical Restrictions**

5          At trial, Mr. Moss argued he was "led to believe that increasing his lifting limit from 40

6   pounds to 50 pounds was the only barrier to obtaining" the 8214 Parking Control Officer Position.

7   (Dkt. No. 113 at 16.)  He submitted into evidence doctors' reports about his medical restrictions

8   and lifting limitations, which were attached to the City's medical separation letter.  The City

9   argues "[t]he Court should grant a new trial on Plaintiff's claim for failure to accommodate

10  because Plaintiff was improperly allowed to admit analyses of his medical restrictions which were

11  unauthenticated, undisclosed expert reports, and hearsay."  (Dkt. No. 196 at 15.)

12         The Court need not address the City's arguments about the reports' admissibility.  Even if

13  it was error to admit the doctors' reports, the City fails to establish substantial prejudice.  The

14  medical reports and other exhibits to which the City objects relate to Mr. Moss's ability to perform

15  the essential functions of his previous role (9613 Transit Operator) and the 8214 Parking Control

16  Officer ("PCO") position.  (Dkt. No. 196-1 at 231 (Trial Exhibit 5, "Supplemental Panel QME

17  Report" reviewing "the job duties as a Parking Control Officer" and concluding "Mr. Moss can do

18  the duties as described in the job description"); *id.* at 247-65 (Trial Exhibit 42, case notes

19  discussing Mr. Moss's efforts to increase his lifting capacity "[i]n an attempt to qualify for the

20  8214 PCO position"); *id.* at 267 (Trial Exhibit 43, letter stating Mr. Moss cannot perform the usual

21  and customary job duties of his job as a 9613 Transit Operator); *id.* at 275 (Trial Exhibit 61, the

22  essential functions guide for the Parking Control Officer position); *id.* at 288 (Trial Exhibit 69,

23  notice of intent to medically separate); *id.* at 322 (Trial Exhibit 70, medical separation letter).

24         Similarly, the trial testimony about those exhibits—which the City claims "support[] [Mr.

25  Moss's] claim that he was able to perform the essential functions of various positions," (Dkt. No.

26  196 at 15)—is all testimony about Mr. Moss's ability to perform the essential functions of the

27  Parking Control Officer position.  (Dkt. No. 196-1 at 66 (Mr. Moss testifying he got his "lifting

28  corrected" to 50 pounds); *id.* at 69 (discussing report stating Mr. Moss could do "the job duties as

10

a Parking Control Officer"); *id.* at 71 (discussing a letter "asking about the parking control position"); *id.* at 73 (noting Dr. Valmassy filled "out an essential functions guide for the parking control officer position"); *id.* at 84 (discussing letter stating Mr. Moss "had various other restrictions that precluded [him] from performing the 8214 [parking control officer] essential functions, such as no repetitive bending or twisting"); *id.* at 87-88 (describing communication stating parking control officers "generally patrol/work up to six and a half hours in a day, with this requirement the candidate would be entitled to more breaks than is prescribed by Policy"); *id.* at 136 (asking witness about Dr. Valmassy "submitting a report . . . clearing Mr. Moss of the 50 pounds lifting restriction); *id.* at 147 (describing how Dr. Valmassy "fill[ed] out the essential functions guide clear[ing] Mr. Moss to perform every single function of a 8214 parking control officer"); *id.* at 153-54 (discussing email about "requirements for 8214 PCO"); *id.* at 175 (discussing Mr. Moss's request "to increase Mr. Moss's lifting capacity"); *id.* at 176 (noting "Dr. Valmassy[] completed an 8214 [Parking Control Officer] essential functions guide and raised Mr. Moss's lifting restrictions to 50 pounds"); *id.* at 179 (discussing letter sent to Dr. Valmassy to "complete the attached forms for the 8214 Parking Control Officer position").

The exhibits the City sought to exclude, and the trial testimony discussing them, do not bear on Mr. Moss's ability to perform the essential functions of the School Crossing Guard position—the position both parties agree was the basis of the jury's verdict. And as described above, because the City's witness testified Mr. Moss "met the minimum qualifications" for the School Crossing Guard position, (Dkt. No. 175 at 46), and substantial evidence supported a finding Mr. Moss did not have any medical restrictions that would prevent him from performing the job's essential functions, the City does not and cannot establish the admission of evidence related to the Parking Control Officer position was prejudicial. So, the Court DENIES the City's request for a new trial on this ground.

### D.    Remittitur

Finally, the City argues the Court should "grant it a new trial on damages and/or remittitur" because "Plaintiff should not be entitled to lost wages at all in light of the fact that he failed to mitigate his damages entirely." (Dkt. No. 196 at 19-20.)

1    If the court, "after viewing the evidence concerning damages in a light most favorable to

2    the prevailing party, determines that the damages award is excessive, it has two alternatives": "[i]t

3    may grant defendant's motion for a new trial or deny the motion conditional upon the prevailing

4    party accepting a remittitur." *Fenner v. Dependable Trucking Co.*, 716 F.2d 598, 603 (9th Cir.

5    1983). "[R]emittitur must reflect the maximum amount sustainable by the proof." *Unicolors, Inc.*

6    *v. H&M Hennes & Mauritz, L.P.*, 52 F.4th 1054, 1087 (9th Cir. 2022). "[T]he purpose of

7    remittitur is to maintain the jury's verdict while lopping off an excrescence." *Id.* (cleaned up).

8    This is "best achieved by minimizing the extent of judicial interference with a matter that is

9    otherwise within the jury's domain." *Id.* (cleaned up).

10    As the City observes, "[u]nder California law, an employee who has been wrongfully

11    terminated has a duty to mitigate damages through reasonable efforts to achieve other

12    employment." *Boehm v. Am. Broad. Co.*, 929 F.2d 482, 485 (9th Cir. 1991). But it does not

13    automatically follow "the jury erroneously ignored this duty when awarding damages to Plaintiff"

14    as the City asserts. (Dkt. No. 196 at 20.) It is not the employee but the employer who "bears the

15    burden of proving that comparable, or substantially similar, employment was available to the

16    employee." *Id.* (cleaned up); *see also Parker v. Twentieth Century-Fox Film Corp.*, 3 Cal. 3d 176,

17    181 (1970) (emphasis added) ("The general rule is that the measure of recovery by a wrongfully

18    discharged employee is the amount of salary agreed upon for the period of service, less the amount

19    which *the employer affirmatively proves* the employee has earned or with reasonable effort might

20    have earned from other employment."). So, the Court "maintain[s] the jury's verdict" by

21    understanding it to mean the City did not meet its burden. *See Unicolors,* 52 F.4th at 1087. This

22    is especially so given the City's minimal argument about mitigation in its closing argument. The

23    City told jurors they had in evidence the salary for the transit cleaner and custodian positions and

24    that damages for Mr. Moss "should be reduced by the amount of money any of these jobs paid

25    based on his failure to mitigate." (Dkt. No. 177 at 135.) The City's closing argument did not

26    address why Mr. Moss with reasonable effort could have obtained these positions—especially

27    given its argument throughout trial that the custodian and transit car cleaner positions were not

28    reasonable accommodations—and why those jobs were comparable or substantially similar.

United States District Court
Northern District of California

1    As the City acknowledges, "the jury was instructed as to Plaintiff's duty to mitigate . . .

2  and it was included on the verdict form." (Dkt. No. 196 at 20.)  Because it was the City's burden

3  to prove mitigation, and because the City's present motion cites no evidence demonstrating it

4  satisfied this burden by proving the amount Mr. Moss might have earned from other employment,

5  the Court declines to interfere with the jury's verdict and DENIES the City's motion for a new

6  trial on damages and/or remittitur.

7  **III.    MR. MOSS'S MOTION TO AMEND THE JUDGMENT**

8    Mr. Moss requests three amendments to the final judgment: (1) a downward adjustment of

9  $4,500 to correct a calculation error he presented to the jury; (2) prejudgment interest; and (3)

10  post-judgment interest.  The Court addresses each in turn.

11    **A.    Damages Award**

12    In determining Mr. Moss's damages, jurors were instructed to consider "[t]he reasonable

13  value of wages Mr. Moss would have earned from the date of his medical separation, October 7,

14  2019, up to today." (Dkt. No. 166 at 17.)  During closing arguments, Mr. Moss argued "[t]here

15  are four possible positions . . . he should get damages for," (Dkt. No. 177 at 111), one of which

16  was the School Crossing Guard position.  Mr. Moss stated the total damages for the School

17  Crossing Guard position "would have been about $255,116." (*Id.* at 114.)  After deliberating, the

18  jury awarded Mr. Moss $255,116 in past lost wages—the precise amount Mr. Moss suggested in

19  closing arguments.  (Dkt. No. 169 at 4.)  Accordingly, the Court entered judgment in favor of Mr.

20  Moss in the amount of $255,116.  (Dkt. No. 172.)

21    In moving to amend the judgment, Mr. Moss submits this figure contained an "honest and

22  inadvertent mathematical error." (Dkt. No. 190 at 7.)  His counsel attests:

23    Following the Court's entry of judgment and in the context of
    calculating prejudgment interest, I realized that my Closing Argument
24    calculations were based on a spreadsheet where I inadvertently
    included an extra month of lost wages for the School Crossing Guard
25    position for 2025.  Using the correct numbers—subtracting that extra
    month—the lost wages for the 8201 School Crossing Guard position
26    should have been $4,500 less, or a total of $250,616.

27  (Dkt. No. 190-1 ¶¶ 6, 9-12.)

28    "In general, there are four basic grounds upon which a Rule 59(e) motion may be

United States District Court
Northern District of California

granted":

> (1) if such motion is necessary to correct manifest errors of law or fact upon which the judgment rests;
> (2) if such motion is necessary to present newly discovered or previously unavailable evidence;
> (3) if such motion is necessary to prevent manifest injustice; or
> (4) if the amendment is justified by an intervening change in controlling law.

*Allstate Ins. Co. v. Herron*, 634 F.3d 1101, 1111 (9th Cir. 2011). Rule 59(e) motions are not limited to these situations and "may be particularly appropriate where . . . the amendment reflects the purely clerical task of incorporating undisputed facts into the judgment." *Allstate Ins. Co. v. Herron*, 634 F.3d 1101, 1111 (9th Cir. 2011).

In this case, the City does not dispute that $250,616 is the proper damages figure for the School Crossing Guard position. In fact, as the City's opposition does not address Mr. Moss's request to amend the damages amount, the Court assumes the City does not oppose it. So, the Court amends its judgment to award Mr. Moss $250,616. This unopposed amendment "comport[s] with the jury's express intentions" to award Mr. Moss the lost wages he would have earned from October 7, 2019 through trial for the School Crossing Guard position. *See Trs. of Cent. States, Se. & Sw. Areas Pension Fund v. Golden Nugget, Inc.*, 697 F. Supp. 1538, 1546 (C.D. Cal. 1988) (amending the judgment upon finding "the jury must have made an honest and inadvertent mistake" in calculating damages).

### B.    Pre-Judgment Interest

Mr. Moss also requests prejudgment interest in the amount of $46,085.45, which the City opposes. The parties agree California Civil Code section 3287(a) governs whether Mr. Moss is entitled to prejudgment interest. The statute provides in relevant part:

> A person who is entitled to recover damages certain, or capable of being made certain by calculation, and the right to recover which is vested in the person upon a particular day, is entitled also to recover interest thereon from that day . . . .

Cal. Civ. Code § 3287(a). Section 3287 balances competing policy concerns. From the plaintiff's perspective, it "compensates for the loss of the use of the money during the period between the assertion of the claim and the rendition of judgment." *Watson Bowman Acme Corp. v. RGW*

1     *Constr., Inc.*, 2 Cal. App. 5th 279, 293 (2016).  From the defendant's perspective, "the certainty

2     requirement promotes equity because liability for prejudgment interest occurs only when the

3     defendant knows or can calculate the amount owed and does not pay."  *Id.*  "Generally, the

4     certainty required of Civil Code section 3287, subdivision (a), is absent when the amounts due

5     turn on disputed facts, but not when the dispute is confined to the rules governing liability."  *Olson*

6     *v. Cory*, 35 Cal. 3d 390, 402 (1983).

7          In this case, the amount due turned on disputed facts, including which position Mr. Moss

8     was qualified for.  As Mr. Moss's motion states, "Plaintiff sought compensation for lost wages

9     that he would have earned had the City reasonably accommodated him in a vacant alternate

10     position for which he was qualified" and "[d]uring trial, Plaintiff argued that there were four such

11     positions."  (Dkt. No. 190 at 6; Dkt. No. 177 at 113-14 (in closing arguments, stating damages

12     amount to $371,002 for the Parking Control Officer position; $362,285 for the Transit Car Cleaner

13     position; $362,285 for the Custodian position; and $255,116 for the School Crossing Guard

14     position).)  To determine damages, then, the jury had to determine which position Mr. Moss

15     proved he was qualified for—and the facts as to Mr. Moss's qualifications were disputed.

16          *Olson* is instructive: there, the amount due to the plaintiffs "was either of two readily

17     calculable amounts: (1) the salary or pension due under section 68203 as it read before the 1976

18     amendment or (2) that due under the section as amended."  35 Cal. 3d at 402.  Because deciding

19     the proper amount "did not depend on any factual uncertainty or dispute but solely on the proper

20     answers to the questions of law," the court concluded such uncertainty "did not prevent the

21     amounts due from being 'certain or capable of being made certain by calculation'" pursuant to

22     section 3287.  *Id.*  Here, as in *Olson*, the amount due under each of the four positions Mr. Moss

23     proposed are "readily calculable": the City need only refer to its compensation manuals.  But

24     unlike in *Olson*, determining the amount due was not a legal question but a factual question.  It

25     was up to the jury to determine whether Mr. Moss was qualified to perform any of the four

26     positions.

27          Mr. Moss observes "California courts have found prejudgment interest appropriate based

28     on hypothetical lost wages."  (Dkt. No. 205 at 5.)  In the case Mr. Moss cites for this proposition,

United States District Court
Northern District of California

United States District Court
Northern District of California

1  the employee's damages were capable of being made certain because the employee was reinstated

2  to the bus driver position he previously held, so lost wages could be calculated based on that

3  position. *Currie v. Workers' Comp. Appeals Bd.*, 24 Cal. 4th 1109, 1111, 17 P.3d 749 (2001); *see*

4  *also San Diego Cnty. Deputy Sheriffs Assn. v. San Diego Cnty. Sheriffs Dep't*, 68 Cal. App. 4th

5  1084, 1086 (1998) (awarding prejudgment interest to an employee who was wrongfully terminated

6  and reinstated with backpay). Here, in contrast, it is undisputed Mr. Moss was not qualified for

7  the bus driver position he previously held, so lost wages could not be calculated based on that

8  position. Rather, Mr. Moss argued the City could have accommodated him in other positions, and

9  there were disputes of fact about his qualifications for those positions.

10      Likewise, Mr. Moss's citation to *Jadwin v. Cnty. of Kern*, 767 F. Supp. 2d 1069, 1091

11  (E.D. Cal. 2011) is unpersuasive. As with *Currie* and *San Diego*, the damages in *Jadwin* were

12  calculated based on the plaintiff's previous job. There were not multiple positions at issue.

13  Moreover, in *Jadwin*, the court adopted the plaintiff's proposal to calculate prejudgment interest as

14  "a reasonable solution to a unique problem, i.e., absence of itemized damages referable to each

15  adverse employment action or identifying the underlying theory of recovery." *Id.* at 1094. As the

16  unique problem in *Jadwin* is not present here, the *Jadwin* court's non-binding reasoning is not

17  persuasive in this context.

18      Notably, there was significant variance in the salaries of the positions Mr. Moss argued

19  were reasonable accommodations. Throughout the case, Mr. Moss appeared to argue that two

20  welder positions would constitute reasonable accommodations. (Dkt. No. 57 (in opposition to the

21  City's motion for summary judgment, arguing "[b]ased on the facts of the case and the many

22  potential positions discussed with Mr. Moss, including the 2708 Custodian, 8201 School Crossing

23  Guard, and the two welder positions, there appears to be no dispute that he has a valid claim that

24  he is a qualified individual under FEHA").) The annual pay for the welder position is more than

25  double the pay for the School Crossing Guard position. (Dkt. No. 179-13 at 11-12 (in the 2019-

26  2020 compensation manuals, the "annual high" for a 7390 Welder was $98,306, whereas the

27  "annual high" for an 8201 School Crossing Guard was $44,914).) Mid-trial, Mr. Moss clarified he

28  was "not arguing the welder position," explaining he would "tell[] the jury right off the bat [during

United States District Court
Northern District of California

1    closing arguments] that we're not seeking money based on the welder position." (Dkt. No. 177 at

2    17-18.) But until that point, there was a dispute of fact as to whether Mr. Moss was qualified for a

3    welder position and thus would be entitled to lost wages for that position. Even setting aside the

4    welder positions, the damages for the Parking Control Officer position were approximately

5    $120,000 more than the damages for the School Crossing Guard position. Given the range of

6    possible damages that could have been awarded in this case depending on the jury's resolution of

7    factual disputes, and given binding precedent that no prejudgment penalty should be "assessed

8    against a litigant for failing to pay a sum which is unascertainable prior to judgment," *Chesapeake*

9    *Indus., Inc. v. Togova Enters., Inc.*, 149 Cal. App. 3d 901, 906 (1983), the Court declines to amend

10    the judgment to include prejudgment interest.

11        **C.**      **Post-Judgment Interest**

12        Mr. Moss requests the Court amend the judgment to add post-judgment interest from

13    January 28, 2025 until the City pays the judgment. Under 28 U.S.C. § 1961(a), "[i]nterest shall be

14    allowed on any money judgment in a civil case recovered in a district court." As the "shall" in the

15    statute indicates, "postjudgment interest on a district court judgment is mandatory." *Air*

16    *Separation, Inc. v. Underwriters at Lloyd's of London*, 45 F.3d 288, 290 (9th Cir. 1995).

17        As the City does not address Mr. Moss's request for post-judgment interest, the Court

18    presumes the City does not oppose it. Post-judgment interest is "calculated from the date of the

19    entry of the judgment, at a rate equal to the weekly average 1-year constant maturity Treasury

20    yield, as published by the Board of Governors of the Federal Reserve System, for the calendar

21    week preceding." 28 U.S.C. § 1961(a). In the calendar week preceding the date of the entry of

22    judgment, the weekly average rate was 4.19%. (Dkt. No. 190-1 ¶ 26-27.) So, the Courts awards

23    post-judgment interest of $28.77 per day.[1]

24                            **CONCLUSION**

25        For the reasons stated above, the City's request for judgment as a matter of law or, in the

26

27    _____

[1] Mr. Moss requested $34.06 per day, which was calculated based on a "revised judgment of $296,705.94" ($250,616 plus $46,089.94 in prejudgment interest = $296,705.94). (Dkt. No. 190-1

28    ¶¶ 23-28.) Because the Court declines to award prejudgment interest, the post-judgment figure is $28.77 ($250,616 x 4.19% = $10,500.81 / 365 days = $28.77).

alternative, a new trial is DENIED.  The Court GRANTS Mr. Moss's motion to amend the judgment to (1) reduce the original amount by $4,500 to correct a calculation error, and (2) add post-judgment interest.  Mr. Moss's request for prejudgment interest is DENIED.  The Court amends the judgment at Docket No. 172 to award Mr. Moss $250,616 in past lost wages and $28.77 per day in post-judgment interest from January 28, 2025 until the City pays the judgment.

This Order disposes of Docket Nos. 190, 191, and 196.

**IT IS SO ORDERED.**

Dated: April 30, 2025

JACQUELINE SCOTT CORLEY
United States District Judge